IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Criminal Action No. 1:22CR11-7
                                            (Judge Kleeh)

DERRICK HAMLET,

        Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Pending before the Court is the motion of the defendant, Derrick Hamlet ("Hamlet") to suppress physical evidence collected during a traffic stop which he claims was conducted in violation of his Fourth Amendment rights.  Also pending is the Report and Recommendation ("R&R") of the Honorable Michael J. Aloi, United States Magistrate Judge, recommending that the suppression motion be denied as well as Hamlet's objections to the R&R.  For the reasons that follow, the Court **ADOPTS** the R&R in its entirety [ECF No. 265], **OVERRULES** Hamlet's objections [ECF No. 282], and **DENIES** his motion to suppress evidence [ECF No. 221].

## I.  PROCEDURAL HISTORY

On May 3, 2022, a grand jury sitting in the Northern District of West Virginia returned a thirty-seven count Superseding Indictment against Hamlet and his ten co-defendants [ECF No. 163].

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Specifically, Hamlet is charged with conspiracy to distribute controlled substances (Count One), possession with intent to distribute fentanyl and heroin (Count Two), possession of a firearm in furtherance of a drug offense (Count Three), aiding and abetting distribution of fentanyl (Count Six), and aiding and abetting distribution of heroin (Count Nine). Id. On September 16, 2022, he moved to suppress the physical evidence that serves as the basis for Counts Two and Three [ECF No. 221]. The Court referred the suppression motion to Magistrate Judge Aloi for initial review [ECF No. 222]. At an evidentiary hearing on November 8, 2022, Magistrate Judge Aloi accepted evidence and heard the testimony of State Trooper Vicky Marra ("Trooper Marra") [ECF No. 253].

## II.   FACTUAL FINDINGS

The Court makes the following findings of fact based upon the parties' briefs and the testimony, arguments, and exhibits from the evidentiary hearing.

The physical evidence that Hamlet seeks to suppress - a firearm, forty-seven (47) individually packaged controlled substances, and drug paraphernalia - was obtained during a traffic stop conducted by Trooper Marra on February 15, 2020.[1]  While

---

[1] Trooper Marra did not have a cruiser camera or a body camera at this time, but she subsequently recorded this traffic stop in a WVSP Report of Criminal Investigation [see ECF No. 253-1].

2

USA v. HAMLET                                          1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],**
**OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND**
**DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

serving as a Field Trooper with the West Virginia State Police
("WVSP") over the last four years, Trooper Marra has received drug
interdiction training and has conducted more than 100 traffic
stops.  Prior to her employment with the WVSP, she worked as a
probation officer for five years in Monongalia County, West
Virginia.

On the evening on February 15, 2020, Trooper Marra was
conducting speed and road control on Interstate 79 ("I-79").  She
parked her marked WVSP cruiser in the median near mile marker 140,
in Marion County.  At approximately 8:00 PM she observed a gold
Saturn vehicle travelling north bound at 80 mph with one headlight.
Because driving with a missing headlight is a traffic violation,
Trooper Marra decided to stop the vehicle.  She allowed the Saturn
to pass before activating her cruiser's emergency lights and sirens
and pulling onto I-79.  Approximately twenty-five seconds later,
she arrived behind the Saturn.  Although it was dark and her lights
were easily visible, the driver of the Saturn did not pull over.

Trooper Marra followed the vehicle with her emergency lights
and sirens activated for approximately five minutes.[2]  During her
pursuit, she observed "a lot of movement from what appeared to be

---

[2] Trooper Marra could not say whether the Saturn sped up as she pursued it
because the WVSP speed monitoring equipment cannot be operated while in motion.

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF NO. 221]**

the front passenger and the driver" [ECF No. 269 at 7:19-21]. The driver continued for roughly six miles before pulling over near mile marker 146, in Monongalia County. "As the suspect vehicle pulled off to the right side of the roadway [Trooper Marra] observed the three (3) suspects fidgeting around inside the vehicle in a frantic matter which appeared to be suspicious" [ECF No. 253-1 at 10].

Trooper Marra focused her cruiser's spotlight on the Saturn and ran its license plate. Her search revealed that the vehicle was registered to Dennis Lytle ("Lytle"). Because she had previously interacted with Lytle as a probationer, Trooper Marra knew him to be an unlawful user of controlled substances and to have a narcotics-related criminal history. She began to suspect that there might be controlled substances in the Saturn.

Trooper Marra could see three individuals in the vehicle, whom she later identified as Lytle, the driver; Hamlet, the front seat passenger; and Darryl Lemaster, the back seat passenger. She approached the Saturn from the passenger side and saw a phone flashlight come on near the driver's seat. At her request, Lytle rolled down the windows. She smelled a slight odor of marijuana[3]

_____

[3] On cross-examination Trooper Marra acknowledged that she did not include this information in her written report.

USA v. HAMLET                                                1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

and instructed the occupants to place their hands where she could see them.  Lytle placed his hands on the steering wheel, Lemaster placed his hands on the back of the driver's seat headrest, and Hamlet kept his hands in his lap.  Trooper Marra swept her flashlight through the vehicle and light reflected from the front passenger seat.  Upon closer inspection, she saw the barrel of a firearm in the front pocket of Hamlet's sweatshirt.  Trooper Marra called for backup and drew her service weapon.  She asked Hamlet if he possessed a firearm, but he did not respond.  She repeated the question and Hamlet nodded yes.  The trooper directed the occupants to remain still and removed the firearm from Hamlet's sweatshirt without incident.  After securing the firearm in her cruiser, she returned to the Saturn and explained why she had stopped the vehicle.  Due to the time of day, the location of the stop, the number of occupants, and the presence of a firearm, Trooper Marra waited for backup to arrive before proceeding further.

Senior Trooper Freddie Little ("Trooper Little") arrived on scene a few minutes later, at approximately 8:10, and the troopers removed the occupants from the Saturn.  Trooper Marra removed Lytle from the vehicle and asked if there was anything else in the car that she should know about.  Lytle responded that there was not.

USA v. HAMLET                                            1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

As Trooper Little removed Hamlet from the passenger seat, he saw a small, pink Igloo cooler on the floor of the Saturn that previously had been concealed by Hamlet's legs and feet.

The troopers then obtained the occupants' identities roadside.  Trooper Little remained with Lytle, Hamlet, and Lemaster while Trooper Marra returned to her cruiser to run National Crime Information Center ("NCIC") checks for each through the WVSP dispatch.  Lytle had two outstanding warrants from Monongalia County, West Virginia and one fully extraditable warrant from the state of Ohio.  Lemaster had one outstanding warrant from the state of Michigan, flagged "for in-state pick up only."  Hamlet had a criminal history but no outstanding warrants.

Trooper Marra also requested a "Triple III report" for Hamlet to determine if he could lawfully possess a firearm.  This report included a summary of his criminal history and stated "Caution Information – Firearms Disqualified Status."  Hamlet's Triple III report noted a variety of charges divided into two cycles.  Cycle 001 included misdemeanor charges related to stolen property.  Cycle 002 included juvenile felony charges for a "weapons offense," "weapon-free school zones – general felony violations;" as well as two misdemeanor charges for possession of marijuana and a

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

misdemeanor charge for "weapons – firearm – possession by minor in public"[4] [ECF No. 253-2 at 6-7].

Upon receipt of this information, Trooper Marra intended to arrest all three of the Saturn's occupants: Lytle on the Monongalia County warrants or the Ohio warrant, Lemaster on the Michigan warrant,[5] and Hamlet for possessing a firearm as a prohibited person.  Because Lytle and Lemaster had pending warrants from other states, Trooper Marra was required to run a "hit report" for each to determine whether those jurisdictions wished for her to make arrests on the pending warrants.  While an NCIC check can be completed in a matter of minutes, a hit report involves interjurisdictional communication and coordination and so requires additional processing time.

While she waited for the results of the hit reports, Trooper Marra returned to the roadside where she spoke to Lytle as Trooper Little spoke to Hamlet and Lemaster nearby.  Trooper Marra again asked Lytle if there was anything in the car that she should know about.  Lytle nodded his head yes but answered no and stated that

---

[4] Although the Triple III report indicated that Hamlet was disqualified from possessing a firearm, none of his criminal convictions actually rendered him a prohibited person.
[5] Although the Michigan warrant was labelled "in-state pick up only," in Trooper Marra's experience, the state of Michigan always requests an out of state arrest and extradition.  Accordingly, she expected Michigan to request that she arrest Lemaster on its outstanding warrant.

USA v. HAMLET                                      1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF NO. 221]**

they had just come from a Narcotics Anonymous meeting.  Based on
Lytle's body language and conflicting behavior, Trooper Marra
believed that he wished to speak to her away from the Saturn's
other occupants.

   She continued the conservation with Lytle in her cruiser.
Her report does not reference this conversation but indicates that,
at this point, "Lytle was placed under arrest for the outstanding
warrants and issued a verbal warning for defective equipment" [ECF
No. 253—1 at 11].   Lytle informed Trooper Marra that he was
currently on probation, that he did not know about the warrants
for his arrest, and that was working as a confidential informant
for the Mon Metro Drug Task Force.  When asked again if there was
anything illegal in the Saturn, he evaded the question.  Lytle
consented to the search of the Saturn but not to the other
occupants' belongings.

   Trooper Marra returned to the roadside and informed Hamlet
and Lemaster that she would be searching the Saturn and requested
their consent to search their belongings.  Lemaster stated that he
had nothing in the vehicle and Hamlet declined the search request.
Trooper Marra informed them that she would be requesting a canine
unit to perform an open-air sniff and Hamlet responded that the
dog would alert because he had smoked marijuana that day.  At this

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

point, the troopers were still waiting for the results of the hit
reports from Michigan and Ohio.

Trooper Marra requested a canine unit at 9:13 PM and Sargent
Timothy Hunn of the Monongalia County Sheriff's Department arrived
on scene at 9:42 PM.  He and his canine partner performed an open-
air search around the perimeter of the Saturn and the dog alerted
on the passenger side.  Troopers Marra and Little then searched
the vehicle.  Inside the Igloo cooler they found five (5) clear
plastic baggies containing marijuana, forty-two (42) clear plastic
baggies containing a white substance, a digital scale, and a box
of clear plastic baggies.  The troopers seized the contents of the
cooler as well as Hamlet's firearm, its magazine, and four rounds
of ammunition.  They then arrested Hamlet and Lemaster for the
possession of controlled substances.

Troopers Marra and Little transported Lytle, Hamlet, and
Lemaster to the WVSP Fairmont Detachment.  There, testing
determined the white powdery substance to be approximately 57 grams
of fentanyl and heroin.  It also determined that marijuana weighed
approximately 141 grams.  At his request during processing, Trooper
Marra informed Hamlet that he was being charged with possession
with intent to deliver heroin, possession with intent to deliver
marijuana, conspiracy to deliver a controlled substance, and

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

possession of a firearm as a prohibited person. Hamlet grew
agitated and argued that he should not be charged with possession
with intent to distribute heroin because the white substance should
have weighed 0.5 grams without the packaging.

The Saturn was towed to an impound lot. The WVSP does not
have a policy outlining when a vehicle should or should not be
towed. If a vehicle's owner is arrested, the arresting trooper
has discretion in determining whether the vehicle will be towed or
whether another licensed occupant will be allowed to leave with
it. But if the trooper decides to tow the vehicle, WVSP policy
requires them to perform an inventory search. In this case, upon
receiving the NCIC information from dispatch, Trooper Marra
believed that she would be arresting all three occupants and that
the Saturn would be towed and an inventory search would be
necessary. Even if Hamlet had not been arrested, Trooper Marra
would not have allowed him to drive the Saturn home due to its
defective equipment although it was within her authority to do so.

### III. MOTION TO SUPPRESS

A. **The Parties' Contentions**

Hamlet argues that the evidence obtained during the traffic
stop should be excluded because it was obtained in violation of
his Fourth Amendment right to be free from unreasonable searches

10

USA v. HAMLET                                                    1:22CR11-7

### MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265], OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF NO. 221]

and seizures [ECF No. 221 at 3, 7]. He specifically contends that Trooper Marra lacked a reasonable suspicion to detain him, did not have a reasonable suspicion to search the Saturn or the Igloo cooler, and unreasonably delayed his detention by one (1) hour and forty-two (42) minutes for the purpose of obtaining a canine search. Id. at 4-7.

The Government conversely asserts that Trooper Marra did not improperly extend the traffic stop, but rather, its length resulted from the communication required between several states regarding the outstanding warrants for Lytle and Lemaster [ECF No. 227 at 4]. It also contends that Trooper Marra had probable cause to arrest Hamlet even before she searched of the Saturn and discovered the controlled substances because his Triple III report indicated that he was disqualified from possessing a firearm. Id. at 4-5. Even so, it asserts that probable cause existed for the search of the vehicle and the Igloo cooler based on the totality of the circumstances. Id. at 5-7. The Government alternatively asserts that Trooper Marra inevitably would have discovered the contents of the Igloo cooler due to the WVSP's inventory search policy. Id. at 5.

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

## B.   The Report and Recommendation

The R&R, dated November 22, 2022, recommended that the Court deny Hamlet's motion to suppress [ECF No. 265 at 34].  It first found that Trooper Marra had a reasonable suspicion to detain Hamlet while she investigated possible narcotics activity based on the driver's delay in stopping, the occupants' frantic behavior, her prior knowledge of Lytle's criminal record, Hamlet's possession of a firearm and concealment of the Igloo cooler under his legs and feet, Lytle's contradictory behavior and statements, the information received from the NCIC checks, the smell of marijuana, and Hamlet's statements about smoking marijuana that day.  Next, the R&R determined that the traffic stop had not been unreasonably extended to obtain a canine search, that any delay resulted from the troopers' diligent investigation efforts, and that probable cause existed for Hamlet's arrest based on the Triple III report indicating that he was prohibited from possessing the firearm found in his possession.  Finally, the R&R found that, because the troopers had probable cause to arrest all the Saturn's occupants, the Saturn had to be towed and the contents of the Igloo cooler would have been inevitably discovered during the mandatory inventory search.

USA v. HAMLET                                           1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

**C.   Hamlet's Objections**

Hamlet objects to the R&R broadly.  He first objects to its conclusion that Trooper Marra had a reasonable suspicion to detain Hamlet for her investigation and that the traffic stop was not unreasonably delayed [ECF No. 282 at 8-15].  Second, he objects to its finding that the inevitable discovery doctrine applies to this case.  Id. at 15-16.  The Government did not respond.

**IV.   STANDARD OF REVIEW**

When considering a magistrate judge's R&R pursuant to 28 U.S.C. § 636(b)(1), the Court must review de novo those portions to which an objection is timely made.  Otherwise, the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the defendant does not object.  Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).  Courts will uphold portions of a recommendation to which no objection has been made unless they are "clearly erroneous."  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

**V.   DISCUSSION**

Due to the extensive nature of Hamlet's objections, the Court has reviewed the R&R de novo and adopts it in its entirety.  For the reasons that follow, it concludes that (1) Trooper Marra had a reasonable suspicion to detain Hamlet for investigatory

13

USA v. HAMLET                                          1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

purposes, (2) Trooper Marra did not unreasonably delay Hamlet's detention to obtain a canine sniff, and (3) the disputed evidence inevitably would have been discovered.

**A.    Applicable Law**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV. It is well-established that "[a] traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances." United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citing Delaware v. Prouse, 440 U.S. 648, 653-54 (1979)). "A traffic stop is reasonable if (1) the stop is legitimate at its inception and (2) the officer's actions during the stop are reasonably related in scope to the basis for the stop." United States v. Perez, 30 F.4th 369 (4th Cir. 2022).

"Observing a traffic violation provides sufficient justification for an officer to detain the offending vehicle and its occupants for as long as it takes to perform the traditional incidents of a routine traffic stop." United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008). The "ordinary inquiries incident to a traffic stop" typically include "inspecting a

14

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265], OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

driver's identification and license to operate a vehicle, verifying the registration of a vehicle and existing insurance coverage, and determining whether the driver is subject to outstanding warrants." United States v. Hill, 852 F.3d 377, 382 (4th Cir. 2017) (quoting Rodriguez v. United States, 575 U.S. 348, 355 (2015)). An officer can extend a traffic stop to investigate a crime completely unrelated to the event that provided the justification for the stop in the first place. United States v. Digiovanni, 650 F.3d 498, 511 (4th Cir. 2011). But a prolonged traffic stop requires "a 'reasonable suspicion' that illegal activity is afoot." Branch, 537 F.3d at 336 (citing Florida v. Royer, 460 U.S. 491, 500 (1983)).

Reasonable suspicion "defies precise definition." Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. McCoy, 513 F.3d 405, 410-11 (4th Cir. 2008). "In making reasonable-suspicion determinations, reviewing courts must look at the totality of the circumstances for each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). Courts must "give 'due weight' to the factual inferences drawn by police officers as they investigate crime," McCoy, 513 F.3d at 410-11 (citing Arvizu, 534 U.S. at 273), and must respect the

USA v. HAMLET                                          1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF NO. 221]**

training and practical expertise of police officers as they
"observe on a daily basis what transpires on the street." Branch,
537 F.3d at 336-37.

> As summarized by the Fourth Circuit:

> If a police officer observes a traffic violation, he is
> justified in stopping the vehicle for long enough to
> issue the driver a citation and determine that the driver
> is entitled to operate his vehicle. The driver's consent
> or reasonable suspicion of a crime is necessary to extend
> a traffic stop for investigatory purposes. In order to
> demonstrate reasonable suspicion, a police officer must
> offer "specific and articulable facts" that demonstrate
> at least "a minimal level of objective justification"
> for the belief that criminal activity is
> afoot. Judicial review of the evidence offered to
> demonstrate reasonable suspicion must be commonsensical,
> focused on the evidence as a whole, and cognizant of
> both context and the particular experience of officers
> charged with the ongoing tasks of law enforcement.

Branch, 537 F.3d at 337 (citations omitted). A search or seizure
in violation of these principles triggers the "exclusionary rule,"
which "forbids the use of improperly obtained evidence at trial."
Herring v. United States, 555 U.S. 135, 139 (2009).

**B.    Trooper Marra had a reasonable suspicion to extend Hamlet's
       detention for investigatory purposes.**

It is undisputed that, because Trooper Marra observed a
traffic violation, she was justified in stopping the Saturn and
detaining its occupants for as long as necessary to perform the
traditional incidents of a routine traffic stop. Branch, 537 F.3d
at 336. But Hamlet contends that Trooper Marra lacked a reasonable

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

suspicion to extend the stop for an investigation into illegal activity unrelated to the Saturn's malfunctioning headlight.  The Court agrees with the R&R and finds that that Trooper Marra had a reasonable suspicion to extend a traffic stop to investigate narcotics-related activity based on the totality of the circumstances.

First, and foremost, Lytle did not pull over within a reasonable amount of time.  The length of time it takes a driver to pull over is a relevant factor in the reasonable suspicion inquiry.  See United States v. Miller, 54 F.4th 219, 229 (4th Cir. 2022); United States v. Mason, 628 F.3d 123, 128 (4th Cir. 2010) (explaining that the defendant had failed to pull over promptly where approximately 90-120 seconds passed between when the officer initiated the stop and when he began questioning the defendant and finding that this delay as well as the driver's interactions with his passenger during this time contributed to the officer's reasonable suspicion of criminal activity).  While "drivers should not be required to pull over as quickly as humanly possible," they must pull over within a reasonable amount of time given the circumstances.  Id. at 230.  Here, Trooper Marra initiated the traffic stop near mile marker 140 at 8:00 PM and arrived directly behind the Saturn approximately twenty-five (25) seconds later.

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Instead of finding a safe place to pull over, Lytle delayed the
traffic stop for approximately four and a half minutes.[6]   He
travelled five miles and crossed into another county while Trooper
Marra followed with her emergency lights and sirens activated.
Nothing prevented Lytle from noticing Trooper Marra's pursuit or
from stopping safely on the shoulder of I-79 earlier.  Thus, given
the circumstances, Lytle clearly failed to react within a
reasonable amount of time.

Also telling is the behavior of the Saturn's passengers during
this pursuit.  In the four and a half minutes she followed the
Saturn, Trooper Marra observed "frantic" movement between Lytle
and Hamlet.  This led her to believe that the occupants were
purposefully delaying the traffic stop so that they could conceal
contraband within the vehicle before interacting with her.  During
the evidentiary hearing, Trooper Marra described the type of delay
and movement she witnessed as "the felony shuffle."  She also
explained that this behavior stands in stark contrast to that of
a typical motorists who would have kept their heads and eyes
forward and pulled over quickly.

---

[6] Hamlet contends that the Court should discount Trooper Marra's testimony
regarding Lytle's delay in pulling over because it cannot be independently
corroborated by video footage or a dispatch log.  The Court, however, finds the
trooper's testimony to be credible.  Her description of events is undisputed
and is corroborated by her written report.

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],**
**OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND**
**DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Further, Trooper Marra quickly learned that the Saturn was
registered to Lytle.  Based on her prior interactions with him as
a probation officer, she knew that he was or had been an unlawful
user of controlled substances and that he had a narcotics-related
criminal history.  Given that and her observations of the Saturn
and its occupants, she suspected that there were controlled
substances in the Saturn even before interacting with Lytle, Hamlet
and Lemaster.  While "[a] prior criminal record 'is not, standing
alone, sufficient to create reasonable suspicion, . . . an officer
can couple knowledge of prior criminal involvement with more
concrete factors in reaching a reasonable suspicion of current
criminal activity." United States v. Sprinkle, 106 F.3d 613, 617
(4th Cir. 1997) (quotation omitted); see also United States v.
Foster, 634 F.3d 243, 246 (4th Cir. 2011).  Thus, Trooper Marra
was entitled to rely on her prior knowledge of Lytle when assessing
the other evidence of criminal activity.

Upon approaching the vehicle, Trooper Marra smelled a faint
smell of marijuana.  Although she did not include this information
in her written report, her testimony has not been disputed and is
corroborated by Hamlet's admission to smoking marijuana that day.
See United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010)

19

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

(establishing that the smell of marijuana emitting from a vehicle creates probable cause to search the vehicle).

Trooper Marra also saw a partially concealed firearm in Hamlet's sweatshirt pocket. "Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia." United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999). Hamlet's Triple III report later indicated that he was disqualified from possessing this weapon. Undoubtedly, the possession of a firearm by a person she believed to be prohibited raised Trooper Marra's suspicions about ongoing narcotics activity. And even his legal possession of a firearm would have this same effect.

In addition, Lytle's contradictory and evasive behavior contributed to Trooper Marra's reasonable suspicion that criminal activity was afoot. Illinois v. Wardlow, 528 U.S. 119 (2000) ("[E]vasive behavior is another pertinent factor in determining reasonable suspicion."). When asked if there was anything illegal in the Saturn. Lytle said no while shaking his head yes. Trooper Marra gather that he wished to speak out of ear shot of Hamlet and Lemaster. Once in Trooper Marra's cruiser, Lytle reported that he was working a confidential information for the Mon Metro Drug Task Force and was evasive when Trooper Marra again asked whether there was contraband in the vehicle. This behavior confirmed the

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

trooper's suspicions that the Saturn might contain controlled substances.

Finally, Hamlet's own behavior during the stop added to Trooper Marra's reasonable suspicion. When Trooper Marra directed the Saturn's occupants to put their hands where she could see them, Lytle and Lemaster lifted their hands into view. Hamlet, however, kept his hands in his lap and near his partially concealed firearm. When she asked if there was a firearm in his pocket, Hamlet did not respond. Only when she asked again did he nod. Trooper Little later discovered that Hamlet had been concealing the Igloo cooler with his legs and feet during Trooper Marra's questioning. Finally, after being informed that a canine unit had been called to the scene, Hamlet admitted to using marijuana that day. Taken together, this is not behavior "in which [an] innocent [person] would engage." United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004); see also United States v. Curry, 478 F. App'x 42, 43 (4th Cir. 2012) ("[The defendant's] visible tremulousness and attempts at concealing items in the glove compartment and his pants pocket suggested behavior 'in which few innocent people would engage.'").

These facts and circumstances observed by Trooper Marra, coupled with her prior acquaintance with Lytle, constituted

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

"sufficient objective evidence" demonstrating reasonable suspicion
that the Saturn's occupations were involved in some sort of
criminality.  Branch, 537 F.3d at 336.  Detaining the Saturn's
occupants long enough to investigate their suspicious behavior was
therefore justifiable in this case and the Court **OVERRULES** Hamlet's
first objection.

**C.   Trooper Marra did not unreasonably delay the stop for the
purpose of a dog sniff.**

Hamlet next contends that Trooper Marra unreasonably extended
the traffic stop by one hour and forty-two minutes for the sole
purpose of obtaining a canine stiff and that Trooper Marra should
have allowed him to leave with the Saturn before the canine unit
arrived.  For the reasons articulated by the R&R, the record does
not support his position.

Because a canine sniff is aimed at "detecting evidence of
ordinary criminal wrongdoing" it is not an ordinary incident of a
traffic stop.  Rodriguez v. United States, 575 U.S. 348, 355
(2015).  Law enforcement may detain a vehicle while awaiting a
drug dog's arrival and sniff, but the detention must be reasonable,
with officers using "diligence in pursuing their investigation"
and minimizing intrusion upon the suspect.  United States v.
McBride, 676 F.3d 385, 395 (4th Cir. 2012) (55-minute detention of
vehicle in parking lot while awaiting arrival of drug dog was not

22

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

unreasonable as officers were diligent in their active investigation). When a trained dog "alerts" to the presence of narcotics, this constitutes probable cause to search the vehicle. Illinois v. Caballes, 543 U.S. 405, 409-10 (2005).

Here, the minor delay caused by canine unit was not unreasonable. Trooper Marra was entitled to detain the vehicle and its occupants "for as long as it [took] to perform the traditional incidents of a routine traffic stop," including determining the status of the occupants' outstanding warrants. Branch, 537 F.3d at 336. While Trooper Marra was able to obtain information about the occupants' criminal histories relatively quickly through NCIC checks, the out-of-state hit requests for Lytle and Lemaster required additional processing time. It is unclear when exactly Trooper Marra received the hit request results, but she had not yet received them when she called for a canine unit at 9:13 PM. Thus, she was still performing the ordinary tasks associated with a traffic stop when she requested a canine sniff. Approximately thirty (30) minutes later the canine unit arrived and quickly performed a perimeter search. The canine alerted on the passenger side, where Hamlet had been seated and the Igloo cooler was located.

USA v. HAMLET                                           1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Given this timeline of events, Trooper Marra did not unreasonably delay Hamlet's detention for the sole purpose of conducting a canine sniff.  Instead, the interaction was extended in the ordinary course of the traffic stop.  Any delay related to the canine sniff lasted, at a maximum, thirty (30) to thirty (35) minutes, the time it took for the canine unit to arrive on scene and perform a perimeter sniff.  This is not an unreasonable amount of time given that the troopers continued to diligently pursue their investigation during the wait.  McBride, 676 F.3d at 395. Accordingly, the extension of the traffic stop until the canine unit arrived was reasonable, and the canine's positive alert provided additional probable cause to search the vehicle.

Hamlet also contends that because he was not actually prohibited from possessing a firearm, he should have been permitted to leave with the Saturn while the hit requests for Lytle and Lemaster were processed.  However, Trooper Marra reasonably believed, based on the information in his Hamlet Triple III report and NCIC check, that he was a person prohibited from possessing a firearm and that there was probable cause for his immediate arrest. See Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is reasonableness.") (internal quotations and citations omitted).

24

USA v. HAMLET                                                    1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF NO. 221]**

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." Cahaly v. Larosa, 796 F.3d 399, 407 (4th Cir. 2015). "[I]n the arrest context, the question is whether the totality of the circumstances indicate to a reasonable person that a 'suspect has committed, is committing, or is about to commit' a crime." United States v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). The officer need not possess enough evidence to support a conviction; rather, there "need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." Brown v. Gilmore, 278 F.3d 362, 367-68 (4th Cir. 2002); Wong Sun v. United States, 371 U.S. 471, 479 (1963)); see also Illinois v. Gates, 462 U.S. 213 (1983) ("[O]nly the probability, not a prima facie showing, of criminal activity is the standard of probable cause."). Not only does an officer not need proof beyond a reasonable doubt, there need not even be a preponderance of the evidence to support an officer's belief that probable cause exists. Humphries, 372 F.3d at 660.

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Based on Hamlet's prior firearm convictions and the Triple III report's warning that he was disqualified from possessing a firearm, Trooper Marra had an objectively reasonable belief that Hamlet was committing a crime by possessing a handgun.  Because probable cause existed for Hamlet's arrest, any delay in his detention caused minimal intrusion upon his rights.[7]  And, even if no probable cause existed for his arrest, Trooper Marra had a reasonable suspicion to continue Hamlet's detention to investigate ongoing narcotics activity.  It would have been nonsensical for her to allow Hamlet to leave in Lytle's Saturn during an investigation involving that vehicle and before she could determine whether the other occupants would be arrested on out-of-state warrants.

For these reasons, the Court **OVERRULES** Hamlet's objection.

---

[7] At the evidentiary hearing, the parties disputed whether Trooper Marra also could have arrested Hamlet for his possession of a firearm as an unlawful user of controlled substances.  Trooper Marra testified she believed that she could have arrested him on this basis due to the smell of marijuana in the car and his admission that he smoked weed that day.  In her report she stated "Hamlet spontaneously uttered he knew the K9 would hit on the car because he smokes marijuana" [ECF No. 253-1 at 11], but she did not include his use of controlled substance as a reason he was prohibited from possessing a firearm in her criminal complaint against Hamlet.

Based on these facts, the Government contended that Trooper Marra also had probable cause to arrest Hamlet as an unlawful user of controlled substances in possession of a firearm.  Hamlet, however, asserted that she could not have charged him on this basis because there was no evidence that he was a habitual drug user.  This issue is not outcome determinative, but for the reasons articulated by the R&R, the Court agrees with the Government.

USA v. HAMLET                                          1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

**D.    Trooper Marra inevitably would have discovered the disputed
evidence.**

Evidence that was illegally uncovered is nonetheless admissible pursuant to the inevitable discovery doctrine "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). Discovery of evidence during an inventory search is one contemplated inevitability. See United States v. Bullette, 854 F.3d 261, 265-66 (4th Cir. 2017). "An inventory search of an automobile is lawful (1) where the circumstances reasonably justified seizure or impoundment, and (2) law enforcement conducts the inventory search according to routine and standard procedures designed to secure the vehicle or its contents." Id. at 265 (citing Colorado v. Bertine, 479 U.S. 367, 371-76 (1987)).

Here, the Government argues that the disputed evidence would have been inevitably discovered because Trooper Marra had probable cause to arrest all three of the occupants and the Saturn would have been searched then towed. The R&R agreed. Hamlet, however, asserts that the inevitable discovery doctrine does not apply in this case because Trooper Marra lacked probable cause to arrest Hamlet and could have permitted him to leave the scene in the Saturn rather than have it towed.

27

USA v. HAMLET                                              1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

Hamlet's argument is unpersuasive. Trooper Marra testified that upon receiving Hamlet's NCIC and Triple III reports, she decided to arrest him for the unlawful possession of a firearm. As discussed above, she had probable cause for this arrest. Trooper Marra also testified that, even if Hamlet had not been arrested, she would not have permitted Hamlet to leave in the Saturn due to its defective equipment. Thus, it is inevitable that the vehicle would have been towed and that the troopers would have found the controlled substances in the Igloo cooler during their mandatory inventory search.

Hamlet relies heavily upon United States v. Williams, No. 5:22-CR-18, 2022 WL 5241754, at *1 (N.D.W. Va. Oct. 6, 2022) (J. Bailey) in support of his position. In Williams, the court granted the defendant's motion to suppress, finding that the disputed evidence would not have been inevitably discovered because the Weirton Police Department's towing policy did not require an inventory search. Here, however, the WVSP's towing policy mandates an inventory search prior to towing. Hamlet's reliance on Williams is thus misplaced.

The Court therefore **OVERRULES** Hamlet's objection and finds that the inevitable discovery doctrine applies in this case.

28

USA v. HAMLET                                                      1:22CR11-7

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [ECF NO. 265],
OVERRULING DEFENDANT'S OBJECTIONS [ECF. NO. 282], AND
DENYING DEFENDANT'S MOTION TO SUPPRESS [ECF. NO. 221]**

## VI.   CONCLUSION

For the reasons discussed, the Court:

(1)   **OVERRULES** Hamlet's objections to the R&R [ECF No. 282];

(2)   **ADOPTS** the R&R in its entirety [ECF No. 265]; and

(3)   **DENIES** Hamlet's motion to suppress [ECF No. 221].

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: May 2, 2023

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA